THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JERI KOE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>　　　　　Defendants. | CASE NO. C13-1708-JCC<br><br>ORDER |

This matter comes before the Court on the motion to dismiss from Defendants United States, the Transportation Security Administration ("TSA"), and TSA Administrator John Pistole (Dkt. No. 28) and Defendant Port of Seattle's motion for summary judgment (Dkt. No. 31). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion to dismiss (Dkt. No. 28) and GRANTS the motion for summary judgment (Dkt. No. 31) for the reasons explained herein.

**I.   BACKGROUND**

On March 5, 2011, Plaintiff arrived at Seattle-Tacoma International Airport ("Sea-Tac") for a flight to San Francisco. (Dkt. No. 4 ¶ I.C.16.) At the airport checkpoint, she walked through the metal detector and was selected for an additional screening. (*Id.*, ¶ I.C.27.) The metal detector did not alarm. (*Id.* ¶ I.C.26.) Plaintiff alleges the screening was "unusually invasive" and involved the screener penetrating her genitals. (*Id.* ¶¶ 26–27.) After the screening, Plaintiff

proceeded to her plane and texted a friend that she had "been felt up the TSA." (*Id.* ¶ 27.) The search triggered Plaintiff's memories of a previous rape, and over the ensuing months Plaintiff "experienced varying degrees of impairment, distress, and intrusive memory." (*Id.* ¶ 34.)

Two days after the screening, Plaintiff used an online TSA complaint form to report the patdown procedure, stating that it "may constitute sexual assault." (*Id.* ¶ 28.) In May 2011, she filed a police report of a sexual assault. (*Id.* ¶ 30.) After speaking with Plaintiff, a Port Police Officer opened a case for the incident. (Dkt. No. 32, Ex. A.) Port Detective Daniel Breed was assigned to investigate. (*Id.* Ex. B.) After several unanswered calls, he spoke with Plaintiff and she described the agent has having "short brown hair" and being "butch looking." (*Id.*) Plaintiff emailed the detective with more specific information regarding the suspect. (*Id.*) Detective Breed obtained a list of employees at the particular screening area Plaintiff had accessed and assembled a photo montage of employees. (*Id.*) He eliminated white female employees from the montage. (*Id.*) Plaintiff describes the process of gathering information to make an identification was "slow." (Dkt. No. 4 ¶ 32.)

On August 17, 2011, Plaintiff participated in the photo montage line-up. (Dkt. No. 32, Ex. B.) She recognized one person but noted that "the hair style is diff & seeing a person in-person (height, skin) would make a big difference." (*Id.*) In September, Plaintiff told Detective Breed that the initial officer's report had listed the wrong date for the incident. After confirming that the identified employee was not working on the relevant day, and that no other employees at that time matched Plaintiff's description, the detective suspended the case. (*Id.*)

On August 5, 2011, Plaintiff filed an administrative claim with the TSA seeking $1,594,375.00 in damages. (*Id.* ¶ 28.) On September 20, 2013, Plaintiff filed her complaint in this case, which describes 11 claims related to the Federal Tort Claims Act ("FTCA"), violations of the Fourth Amendment, civil-rights violations, and obstruction of justice. (Dkt. No. 4 ¶¶ E.15–E.25.) Plaintiff is proceeding *pro se* and this Court therefore liberally construes Plaintiff's pleadings. *See Eldridge v. Clock*, 832 F.2d 1132, 1137 (9th Cir. 1987) (citing *Boag v.*

1  *MacDougall*, 454 U.S. 364, 365 (1982)).

2  **II.     DISCUSSION**

3      **A.      United States' Motion to Dismiss**

4      In ruling on a motion to dismiss, the Court assumes that a plaintiff's factual allegations are true and draws all reasonable inferences in a plaintiff's favor. *See OSU Student Alliance v. Ray*, 699 F.3d 1053, 1061 (9th Cir. 2012). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550 (2007). If the Court dismisses the complaint, the Court should consider whether to grant leave to amend. *See Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

13      **1.   FTCA Claims**

14      Sovereign immunity protects the United States from lawsuits unless that immunity has been waived. *See F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). The FTCA is such a waiver, allowing a claimant to sue the United States for certain torts committed by an employee acting within the scope of his or her office or employment. *See id.*; 28 U.S.C. § 1346(b)(1). However, this waiver does not extend to claims "arising out of" assault, battery, or other specified intentional torts. *See Sheridan v. United States*, 487 U.S. 392, 398 (1988); 28 U.S.C. § 2680(h). In determining when a claim arises out of an intentional tort, the Court must "look beyond a plaintiff's classification of the cause of action to examine whether the conduct is based constitutes one of the [specified] torts." *Sabow v. United States*, 93 F.3d 1445, 1456 (9th Cir. 1996); *see also Snow-Erlin v. United States*, 470 F.3d 804, 808 (9th Cir. 2006) (citing cases).

24      A number of Plaintiff's claims fail because they are either assault or battery claims or because they arise out of the alleged assault. Plaintiff's first claim is "for the reckless negligence by the US, which had awareness of the potential harm of search, and the specific search March 5,

2011 . . ." (Dkt. No. 4 ¶ 15.) Her third claim is for injury resulting from the "[f]emale TSO's sexual violation of Plaintiff." (*Id.* ¶ 17.) She also has a claim for "[a]buse of Rape survivors," in which she describes "deliberate harm" and states "[n]o men or women should be sexually violated by the TSA." (*Id.* ¶ 25.) These three claims all seek redress for an intentional assault and as such are barred by the intentional-tort exception of the FTCA. *See* 28 U.S.C. § 2680(h).[1]

### 2. Claims Related to Investigation of the Intentional Assault

Plaintiff also makes several claims related to how TSA handled her complaints about the intentional assault: a claim for "omission and negligence" related to whether TSA preserved video evidence; a claim for "obstruction" based on whether TSA provided evidence; and a claim for "omission and providing misleading information" concerning TSA's investigation of the assault. (Dkt. No. 4 ¶¶ E.18, 19, 20, 22.) These claims all concern the investigation of the alleged assault and therefore necessarily "arise out of" and are derivative of the assault. *See Smith v. United States*, No. C11-1311-RSL, 2013 WL 194735 at *4 (W.D. Wash., Jan. 17, 2013) ("Because the sovereign has not waived its immunity for the underlying false imprisonment claim, plaintiffs cannot pursue their derivative emotional distress or loss of consortium claims."); *Black v. United States*, No. C13-5415-RBL, 2013 WL 5214189 at *4 (W.D. Wash., Sep. 17, 2013) ("The failure to deliver medical treatment claim flows directly from the shooting and is thus characterized as an intentional act in tandem with the shooting.").[2] As such, they are also barred.

### 3. Constitutional Claims

Plaintiff includes a claim that the assault was an unreasonable search under the Fourth

---

[1] Like numerous other courts to consider the issue, the Court concludes that TSA screeners are not investigative or law enforcement officers such that the exception would be inapplicable. *See, e.g.*, *Welch v. Hungtleigh USA Corp.*, No. 04-0663-KI, 2005 WL 1864296 at *5 (D. Or., Aug. 4, 2005).

[2] Moreover, as discussed in Defendant's briefing, Plaintiff's claims would not be cognizable under Washington law regardless. (Dkt. No. 28 at 7–8.)

Amendment, which the Court interprets as arising under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) (Dkt. No. 41 at 4). (Dkt. No. 4 ¶ E.16; *see also* Dkt. No. 41 at 4 (citing *Bivens*).) The complaint identifies several "unidentified does, TSA officers," against whom this claim is directed. (Dkt. No. 41 at 4.) Defendants do not move to dismiss these claims. (Dkt. No. 28 at 12.) In her response brief, however, Plaintiff also suggests that TSA Administrator John Pistole had "personal knowledge of the potential for injury to rape-victims and his personal actions (in spite of that) . . . leading directly to the inevitable harm someone like Ms. Koe suffered." (Dkt.No. 41 at 5.) This allegation may be interpreted as a claim attempting to hold Administrator Pistole liable. However, such a claim fails because a *Bivens* claim cannot be brought under a theory of respondeat superior.[3] *See Ashcroft v. Iqbal*, 556 U.S. 662, 675–76 (2009). To the extent that this is a challenge to the procedures themselves, this Court lacks jurisdiction, as described below. Even though this Court holds *pro se* plaintiffs to less stringent standards, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), this Court can discern no basis for any possible *Bivens* liability on the part of Administrator Pistole. The Court therefore dismisses these claims as they are interpreted as being directed toward him.

### 4. Challenge to TSA Procedures

Finally, Plaintiff's Complaint may be construed as challenging the TSA patdown procedures. (Dkt. No. 4 ¶ E.24.) To the extent that Plaintiff directly challenges TSA's patdown procedures, this Court lacks jurisdiction. The TSA's security-screening procedures are contained in a document titled Checkpoint Screening Standard Operating Procedure ("SOP"). *See Blitz v. Napolitano*, 700 F.3d 733, 736–37 (4th Cir. 2010) (reviewing development of TSA procedures and noting that the SOP mandates how patdowns are conducted). The Courts of Appeals have exclusive jurisdiction over certain orders as defined by 49 U.S.C. §§ 46110(a); 46110(c).

---

[3] As Defendants note, it also appears that Administrator Pistole was not personally served as would be required were he being sued in an individual capacity. *See* Fed. R. Civ. P. 4(i)(3). (Dkt. No. 42 at 2–3.)

Multiple courts have concluded that TSA's passenger-screening procedures are "orders" for purposes of Section 46110. *See Blitz*, 700 F.3d at 736 (district court lacked jurisdiction to consider passengers' challenge to use of scanners and invasive pat-downs); *Corbett v. United States*, 458 Fed. App'x 866 at *4 (11th Cir. 2012) (district court lacked jurisdiction to consider a claim that was "inextricably intertwined with the SOP"); *Roberts v. Napolitano*, 463 Fed. App'x 4 (D.C. Cir., Apr 10, 2012) (district court lacked jurisdiction to consider direct challenges to SOP); *Ventura v. Napolitano,* 828 F.Supp.2d 1039, 1042–43 (D. Minn., Nov. 3, 2011) (enhanced screening procedure is an "order" for purposes of § 46110); *see also Latif v. Holder*, 686 F.3d 1122 (9th Cir. 2012) (discussing extent of the application of § 46110 in TSA context). Following these decisions, the Court concludes that it lacks jurisdiction to the extent that Plaintiff's complaint is construed as a challenge to these procedures.

Plaintiff argues that she was directed to present her complaint in District Court and that "[t]his alone warrants consideration of her complaint in the District Court." (Dkt. No. 41 at 5.) Although the Court recognizes that this is a frustrating outcome for Plaintiff, the absence of jurisdiction is fatal. Having considered the claims over which this Court has jurisdiction, as described above, the Court concludes that they do not survive Defendants' motion to dismiss and the Court cannot conceive of any factual allegations that would save Plaintiff's claims. The Court therefore GRANTS Defendants' motion to dismiss.

### B. Port of Seattle's Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the case's outcome. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if there is enough evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* at 49. At the summary-judgment stage, evidence must be viewed in the light most favorable to the nonmoving party, and all justifiable inferences must be drawn in the nonmovant's favor. *See*

*Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 960 (9th Cir. 2011).

Defendant characterizes Plaintiff's claim as described in the complaint as one of negligent investigation. (Dkt. No. 31 at 31.) Plaintiff's response characterizes her claim in several manners, including as a violation of a civil-rights statute (Dkt. No. 36 at 5), a violation of administrative procedures (Dkt. No. 36 at 7), and a criminal conspiracy to prevent her from obtaining information (Dkt. No. 36 at 9.)

Plaintiff directs one cause of action at the Port: "Omission. Port Police's limitation on Plaintiff's ability to identify proper suspect, by providing line-up of TSO's the wrong race, was a negligent omission at minimum." (Dkt. No. 4 ¶ E.21.) At other times, she notes that the Port Police are responsible for law enforcement (*Id.* ¶ B.9), were involved in responding to Plaintiff's information requests (*Id.* ¶ B.11), and "were slow to gather information to make an identification" (*Id.* ¶ C.32). In her response to the Port's motion for summary judgment, Plaintiff argues that "the Port Police played a central role" in "frustrating her attempt to identify and prosecute the TSA DOEs named in this case." (Dkt. No. 36 at 4.)

Even construing all facts in Plaintiff's favor and accounting for her *pro se* status, summary judgment for the Port is appropriate. Plaintiff's allegations concerning the Port of Seattle relate solely to the quality of the Port's investigation. (Dkt. No. 31 at 5–6.) Washington recognizes no cause of action for negligent investigation of crimes against adults. *See Rengo v. Cobane*, No. C12-0298-TSZ, 2013 WL 3294300 (W.D. Wash, June 28, 2013) ([A] claim for negligent investigation is not cognizable under common law in Washington."); *Dever v. Fowler*, 816 P.2d 1237, 1242–43 (Wash. App. 1991), *as amended* 824 P.2d 1237, 1238 (Wash. Ct. App. 1992) ("The reason courts have refused to create a cause of action for negligent investigation is that holding investigators liable for their negligent acts would impair vigorous prosecution and have a chilling effect upon law enforcement."); *cf. M.W. v. Dep't of Soc. & Health Servs.*, 70 P.3d 954, 960 (2003) (recognizing a limited cause of action for negligent investigation in the context of a child-abuse investigation).

Similarly, even construing Plaintiff's mention of "due process" in her response as a possible claim, a crime victim has no due-process right in the investigation of the relevant crime. *See Dix v. County of Shasta*, 963 F.2d 1296, 1298–99 (9th Cir. 1992), *overruled on other grounds by Sandin v. Connor*, 515 U.S. 472, 488 (1995) ("There is no history, tradition or precedent suggesting that the liberty component of the Due Process Clause encompasses [a right for crime victims to become involved in the prosecution of a defendant].").

Plaintiff's attempt to suggest criminal liability or a criminal conspiracy in response to the summary-judgment motion does not save her allegations. (Dkt. No. 36 at 4–5 (citing Wash. Rev. Code § 9A.08.010 (defining different levels of criminal culpability); § 9A.08.020 (defining when criminal liability exists for crime of another); § 9A.72.150 (elements of the gross misdemeanor of tampering with physical evidence).)  First, no such conspiracy was alleged in the complaint. *See Bruns v. National Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (Court should not "supply essential elements of the claim that were not initially pled."); *Brazil v. U.S. Dept. of Navy*, 66 F.3d 193, 198–99 (9th Cir. 1995) (Even *pro se* pleadings "must meet some minimum threshold in providing a defendant with notice of what it is that it allegedly did wrong."). Equally important, Plaintiff's allegations of criminal misconduct are even less supported than her claims of negligent investigation. The only facts she points to are that she was presented with a montage of photo suspects who were of the wrong race (Dkt. No. 36 at 4),[4] and that her request for badge photos was denied, apparently in accordance with standard procedures (Dkt. No. 36 at 5–6). Neither of these suggests the existence of a criminal conspiracy. Nor do vague conjectures about evidence that may or may not have existed suffice. (*See, e.g.*, Dkt. No. 36 at 5 ("It has not been clearly established that no digital video existed when Plaintiff made her police report.").)

Construing Plaintiff's request in the last paragraph as a request for a delay to conduct

---

[4] Neither the police report nor Plaintiff suggests that she raised this issue at the time of the montage. She identified one of the women included in the montage, but it subsequently turned out that this woman was not working at the relevant time.

ORDER
PAGE - 8

further discovery under Fed. R. Civ. P. 56(d), the Court denies the request. Overlooking the procedural irregularities that would justify a denial, Plaintiff identifies no facts—and the Court cannot conceive of any—that are currently unavailable but that would come to light with further delay. *See* Fed. R. Civ. P. 56(d) (allowing court to defer consideration of motion if specified reasons justify belief that a party cannot yet present essential facts).

## III.   CONCLUSION

For the foregoing reasons, the Court hereby GRANTS the motion to dismiss (Dkt. No. 28) and GRANTS the motion for summary judgment (Dkt. No. 31) for the reasons explained herein.

DATED this 29th day of July 2014.

                                                                  John C. Coughenour
                                                                  UNITED STATES DISTRICT JUDGE